IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Robin Duncan and Justin Rockey,

   Plaintiffs,

  v.              Case No. 2:11-cv-913
                   JUDGE GRAHAM

U.S. Bank National Association, et al.,

   Defendants.

OPINION AND ORDER

  Plaintiffs Robin Duncan and Justin Rockey are mortgagors who bring this action against U.S. Bank National Association and Select Portfolio Servicing, Inc. ("SPS"), who held the mortgage and promissory note. Plaintiffs allege that defendants contacted plaintiffs and instructed them to stop making mortgage payments until further notice. Plaintiffs allege that they followed this instruction but that U.S. Bank filed a state court foreclosure action against them three months later.

  The complaint asserts nine claims, including for breach of contract, fraud, and a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692f. Defendants have moved to dismiss the complaint on several grounds, including that the claims are precluded by *res judicata*. For the reasons stated below, the motion to dismiss is granted.

**I. Background**

  Plaintiffs entered into a mortgage loan with First Franklin Financial Corporation in 2005 in connection with their purchase of a house in Delaware County, Ohio. The complaint alleges that plaintiffs and First Franklin entered into a loan modification agreement in 2007. According to the complaint, First Franklin went defunct later in 2007 and SPS and U.S. Bank purchased the loan and mortgage.

  The complaint alleges that SPS contacted plaintiffs in August 2010 and instructed them to stop making their mortgage payment because their paperwork was "in transition." Compl., ¶ 11. SPS allegedly told plaintiffs not to resume payment until they received a "notification in the mail." Id. The complaint alleges that plaintiffs complied with SPS's instruction to stop making payments.

1

U.S. Bank filed a foreclosure action in state court in October 2010 and later moved for default judgment. The court entered default judgment in January 2011 and found that U.S. Bank had submitted sufficient evidence demonstrating that: plaintiffs were served with summons; plaintiffs were in default on the promissory note; the mortgage deed was properly recorded; the mortgage lien had been validly assigned to U.S Bank; the mortgage lien held by U.S. Bank had priority over other liens; and U.S. Bank was entitled to the remedy of foreclosure.

The complaint in this action alleges that during the pendency of the foreclosure suit, SPS called and harassed plaintiffs with demands to pay a certain sum of money in order for the foreclosure suit to be dismissed. The complaint further alleges that plaintiffs received a March 4, 2011 letter from SPS in which plaintiffs were offered an opportunity to "reinstate" their mortgage for a down payment of $4200. Comp., ¶ 15. Plaintiffs allege that they elected not to accept the proposed forbearance plan. Plaintiffs further allege that SPS sent another letter on May 4, 2011 offering to halt the foreclosure action if plaintiffs paid a lump sum of $25,000. Plaintiffs elected not to pay the demanded amount.

On May 31, 2011, plaintiffs filed a motion in the foreclosure suit for relief from the judgment under Ohio R. Civ. P. 60. The state court denied this motion, rejecting plaintiffs' assertions that service of summons was not proper and that they had meritorious defenses to the foreclosure action (namely, that the assignment to U.S. Bank was defective).

Plaintiffs have filed this action and assert nine claims, which are discussed below. Defendants have moved to dismiss.

**II.     Standard of Review**

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations

in the complaint as true. Iqbal, 556 U.S. at 679; Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Twombly, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see also Twombly, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"); Papasan v. Allain, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." Twombly, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "[s]pecific facts are not necessary," Erickson, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," Twombly, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. Iqbal, 556 U.S. at 678-79; Twombly, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

**III.     Discussion**

    **A.  Count I – Injunctive Relief**

The complaint seeks a permanent injunction to prevent plaintiffs from being evicted from their home pursuant to the state court judgment. Plaintiffs argue, without identifying any legal basis for their argument, that this court should enjoin enforcement of the state court order. But this court is without authority to grant such relief. Under the Rooker-Feldman doctrine, federal district courts are empowered to exercise only original, not appellate, jurisdiction. Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283-87 (2005) (discussing Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)). The doctrine precludes a federal district court from entertaining "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 544 U.S. at 283.

    **B.  Claim Preclusion – Pre-foreclosure Conduct**

The complaint asserts seven claims that relate, in whole or part, to alleged misconduct by the defendants which culminated in the filing of the foreclosure action. In particular, the complaint asserts four claims – for breach of contract, promissory estoppel, fraud, and quasi contract/unjust enrichment – arising from the allegation that plaintiffs ceased making mortgage payments because defendants instructed them to do so. Plaintiffs allege that defendants' instruction breached the 2007 loan modification agreement[1] (breach of contract), was a binding promise on which plaintiffs relied to their detriment (promissory estoppel), was a material misrepresentation (fraud), and that defendants unfairly retained the benefit of past mortgage payments that had been made (quasi contract/unjust enrichment).

In each of these four claims, plaintiffs make allegations that, if accepted as true, would compel the conclusion that plaintiffs were not legally responsible for the default on their loan. Plaintiffs allege that they are excused from performance of the contract because defendants first

---

[1] The theory of how defendants' conduct constituted a breach of contract is unclear from the complaint. The complaint alleges, without further explanation, that defendants breached the contract "by advising Plaintiffs to quit paying their loan modification payments." Compl., ¶ 31.

4

breached the agreement. Plaintiffs allege that defendants made binding promises and material misrepresentations that excused plaintiffs from paying their mortgage. Plaintiffs also allege that defendants' unjust retention of mortgage payments and instruction to make no further payments provides grounds for a quasi contract in plaintiffs' favor for the value of the benefit conferred.

The complaint asserts three additional claims for a violation of the Ohio Consumer Sales Practices Act ("OCSPA"), O.R.C. § 1345.02, breach of the covenant of good faith and fair dealing, and bad faith.[2] These claims concern the allegation that defendants' tactic of filing the foreclosure suit after instructing plaintiffs not to make mortgage payments was deceptive and unconscionable. Though the allegations as to these three claims would not necessarily compel a conclusion that plaintiffs were not in default, they do relate directly to the same nucleus of operative facts as the other four claims.

Defendants move to dismiss the claims as barred by the doctrine of claim preclusion. Under the claim preclusion branch of *res judicata*, "[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp., 73 Ohio St.3d 379, 382, 653 N.E.2d 226, 229 (Ohio 1995). Claim preclusion bars subsequent actions involving the same legal theory of recovery as the previous action, as well as claims that could have been litigated in the previous action. Id. The elements of claim preclusion are: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action arising out of the transaction or occurrence that was the subject matter of the previous action; (3) the second action involves the same parties or their privies as the first; and (4) the second action raises claims that were or could have been litigated in the first action). Portage Cty. Bd. of Commrs. v. Akron, 109 Ohio St.3d 106, 123, 846 N.E.2d 478, 495 (Ohio 2006).

Plaintiffs' only opposition to the application of claim preclusion is that the default judgment in state court was not an "actual litigation" on the merits. Besides confusing the doctrines of issue

---

[2] As defendants correctly argue, an alternative basis for dismissal of the bad faith claim is that an independent cause of action for bad faith is recognized in Ohio only in the insurance context. See, e.g., Gollihue v. Nat'l City Bank, 969 N.E.2d 1233, 1235 (Ohio Ct. App. 2011); Stevenson v. First Am. Title Ins. Co., No. 05-CA-39, 2005 WL 3303959, at **2-3 (Ohio Ct. App. Nov. 30, 2005).

and claim preclusion, see Ft. Frye Teachers Ass'n, OEA/NEA v. State Emp. Relations Bd., 81 Ohio St.3d 392, 395, 692 N.E.2d 140, 144 (Ohio 1998) (actual litigation requirement is an element of issue preclusion), plaintiffs' argument is contrary to the case law.  Ohio courts "expressly recognize that '[a] default judgment is a valid and final judgment upon the merits, and it can be, therefore, a proper bar to later claims for purposes of claim preclusion.'"  Kline v. Mortgage Elec. Sec. Sys., 3:08-cv-408, 2011 WL 1118485, at *5 (S.D. Ohio Feb.16, 2011) (quoting Stand Energy Corp v. Ruyan, No. C-050005, 2005 WL 2249107, at *2 (Ohio Ct. App. Sept. 16, 2005)).

In a similar case in which a plaintiff brought suit in federal court against the company servicing his mortgage after a state court had entered default judgment against him in a mortgage foreclosure action brought by that same party, the federal district court explained the distinction between issue and claim preclusion as follows:

> In Ohio a default judgment may have issue preclusive effect only if the judgment expressly adjudicates an issue.  A default judgment based on an unanswered complaint does not constitute an express adjudication.  In re Monas, 309 B.R. 302, 306–07 (Bankr. N.D. Ohio 2004) (quoting In re Sweeney, 276 B.R. 186, 193 (B.A.P. 6th Cir. 2002)).
>
> In this case, the state court default judgment resulted from plaintiff's failure to answer the complaint, not on express adjudication of any issue.  Therefore, as plaintiff correctly argues, the default judgment is not issue preclusive and does not bar plaintiff's suit here.
>
> This is not so, however, with claim preclusion.  Claim preclusion depends only on whether the court entered final judgment, not whether the parties actually litigated a particular claim covered by that judgment.  See Lewis v. Kizer, [No. 17–03–05,] 2003 WL 21904793 (Ohio Ct. App. [Aug.11, 2003] ).  A default judgment acts as a valid and final judgment on the merits.  Stand Energy Corp. v. Ruyan, [No. C–050005,] 2005 WL 2249107, *2 (Ohio Ct. App. [Sept.16, 2005] ).  [This] satisfies the first element of claim preclusion.
>
> Here, plaintiff's default on her mortgage gave rise to both the foreclosure action and her current claims.  Plaintiff acknowledges that "the handling of the mortgage on the Property is a subject of this lawsuit," and contests in her complaint whether MERS had "authorization to file the foreclosure."  Plaintiff now attempts to relitigate claims relating to the mortgage loan that was the subject of the foreclosure action in 2005.  These facts satisfy the second element of claim preclusion.

Harris–Gordon v. Mortgage Elecs. Registration Sys., No. 3:09CV02700, 2010 WL 3910167, at **2–3 (N.D. Ohio Oct. 4, 2010) (citations to record omitted).

Here, the court finds that all of the elements of claim preclusion are satisfied. The judgment in state court was a final and valid decision on the merits. See also Poulos v. PNC Bank, N.A., No. 1:12-cv-827, 2013 WL 684731, at *3 (S.D. Ohio Feb. 25, 2013) ("[D]efault judgment operates as a final judgment on the merits."). This action arises out of the same transaction or occurrence that was at issue in the foreclosure action – the existence of a mortgage loan between the parties and plaintiffs' nonpayment beginning in August 2010. See Grava, 73 Ohio St.3d at 382, 653 N.E.2d 226 (defining "transaction" as a "common nucleus of operative facts"). And both actions involve the same parties or their privies.

Finally, this action raises claims that could have been litigated in the first action. Indeed, the four claims for breach of contract, promissory estoppel, fraud, and quasi contract/unjust enrichment all constitute defenses to the claim in the foreclosure action that plaintiffs were in default. These claims should have been raised in the prior action. The other three claims for an OCSPA violation, breach of the covenant of good faith and fair dealing, and bad faith also could have been raised in the prior action because they relate to defendants' alleged deceitful conduct that culminated in their filing of the foreclosure action. See Chapman v. PNC Bank, N.A., No. 1:11-cv-2229, 2012 WL 163040, at *4 (N.D. Ohio Jan. 18, 2012) (federal suit brought by mortgagor following state foreclosure action was barred by claim preclusion because claims, though they would not have been defenses to the foreclosure suit, could have been filed as counterclaims).

Accordingly, Counts II through VII are dismissed to the extent they concern events culminating in defendants' filing of the foreclosure action.

### C. Failure to State a Claim – Post-foreclosure Conduct

The complaint asserts several claims[3] arising out of the allegation that defendants, after filing the foreclosure action, made offers to dismiss the foreclosure action or not pursue eviction if plaintiffs paid a certain sum of money. Plaintiffs bring claims for promissory estoppel, fraud, and a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692f.

The court finds that the complaint fails to state a claim for promissory estoppel or fraud. Reliance is an element of both claims. See Shampton v. Springboro, 98 Ohio St.3d 457, 461, 786

---

[3] The court examines here only those claims for which the complaint expressly references conduct occurring after defendants filed the foreclosure action.

7

N.E.2d 88, 8873 (Ohio 2003) (promissory estoppel); Burr v. Bd. of Cty. Commrs. of Stark Cty., 23 Ohio St.3d 69, 73, 491 N.E.2d 1101, 1105 (Ohio 1986) (fraud). It is not plaintiffs' allegation that they in fact paid the lump sums in reliance upon defendants' promise to halt the foreclosure proceedings. To the contrary, the complaint expressly alleges that "Plaintiffs did not elect to enter into the forbearance plan." Compl., ¶ 16. Thus, the complaint fails to plead the element of reliance.

Turning to the FDCPA claim, the complaint alleges that "SPS harassed Plaintiffs by calling at all hours demanding money" and telling plaintiffs that the foreclosure action would be dismissed if plaintiffs "just paid a certain amount." Compl., ¶ 14. SPS allegedly sent letters to plaintiffs in 2011 to the same effect.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive collection practices are not competitively disadvantaged and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Liability under the FDCPA attaches only to those who meet the statutory definition of a "debt collector." Glazer v. Chase Home Finance LLC, 704 F.3d 453, 457 (6th Cir. 2013).

Defendants correctly move to dismiss because SPS is not a debt collector. A "debt collector" includes only those persons "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due *another*." 15 U.S.C. § 1692a(6)(e) (emphasis added). The complaint alleges that SPS purchased the loan from First Franklin in 2007, many years before SPS's alleged attempts to collect the debt. "[A] creditor is not a debt collector under the FDCPA. . . . Nor is an assignee of a debt that was not in default when assigned." Joyner v. MERS, 451 Fed. Appx. 505, 507 (6th Cir. 2011) (citing MacDermid v. Discover Fin. Servs., 488 F.3d 721, 734-35 (6th Cir. 2007); Wadlington v. Credit Acceptance Corp., 76 F.3d 103, 106 (6th Cir. 1996)).

Accordingly, the complaint fails to state a claim for promissory estoppel, fraud, or a violation of the FDCPA for conduct occurring after defendants filed the foreclosure action.

**IV.     Conclusion**

Defendant's motion to dismiss (doc. 4) is thus GRANTED and this action is DISMISSED. The Clerk of Court shall enter final judgment in favor of defendants.


                                          s/ James L. Graham
                                          JAMES L. GRAHAM
                                          United States District Judge

DATE: September 25, 2013